United States District Court
Southern District of Texas
**ENTERED**
January 18, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOHN ALLEN GOODWIN, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-21-680 |
| | § | |
| DEVON COLLINS, | § | |
| | § | |
| *Defendant.* | § | |

## MEMORANDUM OPINION AND ORDER

Former state inmate John Allen Goodwin filed an amended civil rights complaint under 42 U.S.C. § 1983, alleging that former TDCJ correctional officer Devon Collins failed to protect him from being injured by a fellow inmate. (Dkt. 7). Collins answered the amended complaint, (Dkt. 31), and, after a lengthy period of discovery, filed a motion for summary judgment. (Dkt. 50). Goodwin filed a response to the motion, (Dkts. 66, 67, 68), and Collins filed a reply. (Dkt. 69). Having reviewed the motion, the response and reply, and all matters of record, the Court grants summary judgment in favor of Collins and dismisses this action for the reasons explained below.

## I. BACKGROUND

The parties agree on some, but not all, of the facts giving rise to this action. On November 15, 2019, Goodwin was at TDCJ's Darrington Unit in transit back to

his assigned unit. (Dkt. 50-5, p. 6). At that time, Goodwin had a custody designation of P2, and he was assigned to cell 11 on the line of cells designated for inmates in transit. (*Id.*).

Also on November 15, 2019, TDCJ inmate Raymond Ramirez, who was permanently assigned to the Darrington Unit, was brought back to that unit after a hospital stay. (*Id.*). Ramirez had a custody designation of G5. (Dkt. 50-3, p. 111-12). He was assigned to cell 12 on the line of cells designated for inmates in transit upon his return. (Dkt. 50-5, p. 6).

On the evening of November 15, 2019, Collins was a TDCJ corrections officer assigned to escort incoming inmates to their assigned cells. (Dkt. 50-4, pp. 43-44). He was ordered by Lieutenant Sylvester to escort Ramirez to cell 11 on the transit line. (*Id.* at 43). Collins did not cross-check the cell assignment roster or take any other steps to ensure that he was placing Ramirez in the proper cell; he simply did as he was told by his lieutenant. (*Id.* at 43-44).

The parties disagree about what happened next. Goodwin contends that when Collins arrived at cell 11 with Ramirez and opened the cell door, both Goodwin and Ramirez determined that they had different custody designations, and they both told Collins that they should not be housed together because of those different designations. (Dkt. 68, p. 6). Goodwin alleges that Collins responded, "I don't give a f--k. Go on in there." (*Id.*). In contrast, Collins contends that neither Goodwin

2

nor Ramirez said anything to him about their custody designations, and neither expressed about any concern about being housed together in the same cell. (Dkt. 50-4, pp. 46-47).

Later that evening, another officer was doing an inmate count and discovered that Ramirez had been placed in the wrong cell. (Dkt. 50-5, p. 4). Ramirez was removed from the cell with Goodwin and placed into his proper cell. (*Id.*). Shortly thereafter, Goodwin passed a handwritten note to the officer stating that he had been sexually assaulted by Ramirez while they shared the cell. (*Id.*). A security incident investigation was started immediately, and Goodwin was taken for medical evaluations. (*Id.*). Goodwin alleges that he suffered pain from the assault and that he was required to undergo several weeks of preventative treatment for sexually transmitted diseases because of the assault. (Dkt. 68, pp. 8-9).

In his § 1983 complaint, Goodwin sues Collins, alleging that Collins failed to protect him from the assault by Ramirez. (Dkt. 7). Goodwin alleges that Collins was aware that he was a P2 inmate and that Ramirez was a G5 inmate, and therefore Collins knew that Goodwin faced a substantial risk of harm if the two inmates were placed together in a cell. (*Id.* at 4-5). Goodwin alleges that Collins displayed deliberate indifference to that risk when he placed Ramirez in the cell rather than double-checking cell assignments or seeking the assistance of a supervisor. (*Id.* at

3

10-13). Goodwin seeks both compensatory and punitive damages from Collins. (*Id.* at 13-14).

Collins responded to Goodwin's complaint with a motion for summary judgment, contending that he is entitled to judgment in his favor on the basis of qualified immunity. (Dkt. 50). Collins alleges that there is no evidence that he knew of the respective custody designations of Goodwin and Ramirez. (*Id.* at 13-19). Alternatively, he alleges that even if he was told of the custody designations, housing a P2 inmate with a G5 inmate does not, standing alone, give rise to an inference that the P2 inmate faces a substantial risk of serious harm. (*Id.*). Collins points out that inmates designated as P2 are permitted to be with general population inmates in a variety of circumstances. (*Id.* at 14). He also points out that inmates designated as G5 are not necessarily designated as such due to violent conduct. (*Id.* at 15). Collins therefore contends that simply placing a P2 inmate in a cell with a G5 inmate does not necessarily create a substantial risk of harm to the P2 inmate. (*Id.*). He further contends that even if the Court determines that housing the two together was a constitutional violation, he is entitled to qualified immunity because the law on that issue is not clearly established.[1] (*Id.* at 19-20).

---

[1] Collins also asserts in his motion for summary judgment that Goodwin did not satisfy the injury requirement of 42 U.S.C. § 1997e. (Dkt. 50, pp. 20-21). He withdrew that argument in his reply. (Dkt. 69, p. 10).

4

Goodwin filed a timely response to Collins's motion, together with a brief in support and a lengthy appendix. (Dkts. 66, 67, 68). Goodwin asserts that disputed issues of material fact exist as to whether Collins knew that Goodwin and Ramirez had different custody designations and whether he acted with deliberate indifference to a substantial risk of harm by requiring the two to share a cell. (Dkt. 66, pp. 2-3). Goodwin also alleges that the law is clearly established that prison officials have an obligation to take reasonable steps to protect inmates from substantial risks to their safety. (Dkt. 67, pp. 21-23). Collins filed a timely reply, disputing Goodwin's characterization of the facts and his assertion that the law is clearly established. (Dkt. 69).

## II. LEGAL STANDARDS

### A. Actions Under 42 U.S.C. § 1983

Goodwin filed his complaint under 42 U.S.C. § 1983. "Section 1983 does not create any substantive rights, but instead was designed to provide a remedy for violations of statutory and constitutional rights." *Lafleur v. Texas Dep't of Health*, 126 F.3d 758, 759 (5th Cir. 1997) (per curiam). To state a valid claim under § 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *See West v. Atkins,* 487 U.S. 42, 48 (1988). When the undisputed facts do not show a violation of a constitutional right,

the defendant is entitled to summary judgment in his favor. *See, e.g., Williams v. Bramer,* 180 F.3d 699, 705 (5th Cir. 1999) (affirming summary judgment in favor of defendant when the undisputed facts did not amount to a constitutional violation).

### B. <u>Summary Judgment</u>

Collins has filed a motion for summary judgment. "Summary judgment is appropriate only if 'the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.'" *Tolan v. Cotton,* 572 U.S. 650, 656-57 (2014) (per curiam) (quoting FED. R. CIV. P. 56(a)). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.,* 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-25 (1986)). "A fact is material if its resolution could affect the outcome of the action." *Dyer v. Houston,* 964 F.3d 374, 379 (5th Cir. 2020) (quoting *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.,* 627 F.3d 134, 134 (5th Cir. 2010)). "A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Westfall v. Luna,* 903 F.3d 534, 546 (5th Cir. 2018) (cleaned up).

When considering a motion for summary judgment, the Court must view all evidence and draw all inferences "in the light most favorable to the [nonmoving] party." *Tolan,* 572 U.S. at 657 (quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144,

6

157 (1970)); *see also Dyer*, 964 F.3d at 380. When both parties have submitted evidence that tends to show conflicting facts, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995). However, the Court will not consider the nonmoving party's conclusory allegations and unsubstantiated assertions as evidence. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). After viewing all of the evidence in the light most favorable to the nonmoving party, summary judgment may be granted if the nonmoving party has failed to show that disputed issues of fact exist as to every element essential to his case on which he bears the burden of proof. *See Celotex,* 477 U.S. at 322-23.

### C. Qualified Immunity

Collins moves for summary judgment solely on the basis of the defense of qualified immunity. Qualified immunity protects public officials acting within the scope of their authority from claims for monetary damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

7

When a defendant raises qualified immunity as a basis for summary judgment, "[t]he plaintiff bears the burden of negating qualified immunity." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). To do so, the plaintiff must show both "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *al-Kidd*, 563 U.S. at 735 (quoting *Harlow*, 457 U.S. at 818); *see also King v. Handorf*, 821 F.3d 650, 654 (5th Cir. 2016) ("The plaintiff must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct." (quoting *Gates v. Tex. Dep't of Protective & Regul. Servs.*, 537 F.3d 404, 419 (5th Cir. 2008))). The Court may address the two elements in either order, *see Pearson*, 555 U.S. at 239, but the plaintiff must establish both elements to overcome the qualified immunity defense.

## III. DISCUSSION

Because Collins relies on the defense of qualified immunity, the burden is on Goodwin to rebut that defense by showing that Collins's actions violated Goodwin's constitutional rights as defined by clearly established law. The Court considers each element in turn.

8

### A. <u>Violation of a Constitutional Right</u>

To satisfy the first element necessary to overcome the qualified immunity defense, Goodwin asserts that Collins violated his Eighth Amendment rights by failing to protect him from a sexually violent attack by Ramirez. The Eighth Amendment requires prison officials "to protect inmates from violence at the hands of other prisoners." *Farmer v. Brennan,* 511 U.S. 825, 833 (1994). But not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834. Instead, to succeed on a claim for failure to protect, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm" and that the prison official acted with "deliberate indifference" to the inmate's health or safety. *Id.*

A prison official is deliberately indifferent if he "knows of and disregards an excessive risk to inmate health or safety"—that is, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "The official's knowledge of the risk can be proven through circumstantial evidence, such as by showing that the risk was so obvious that the official must have known about it." *Id.* at 842. Because this standard requires an evaluation of both subjective knowledge and objective reasonableness, the Court must view the evidence based on solely the

9

defendant's individual role in the disputed incident. *See Longoria v. Texas*, 473 F.3d 586, 593 (5th Cir. 2006).

In cases involving inmate-on-inmate violence, the Fifth Circuit has held that a prison official who fails to take reasonable steps to protect one inmate from another inmate who is known to be violent may be a constitutional violation. *See Hinojosa v. Johnson*, 277 F. App'x 370 (5th Cir. 2008) (per curiam); *see also Purvis v. Johnson*, 78 F. App'x 377 (5th Cir. 2003) (per curiam) (vacating the dismissal of a failure-to-protect claim when the plaintiff had repeatedly told prison officials over an eight-day period that he was in danger because his cellmate was threatening him and bullying him while in their cell, but prison officials rebuffed his requests for help). But if prison officials have no knowledge of any facts tending to show that one inmate is engaging in threatening or violent behavior, those officials do not violate the Constitution if they take no action to protect other inmates from that unknown risk. *See, e.g., Perez v. Anderson*, 350 F. App'x 959 (5th Cir. 2009) (per curiam) (affirming the dismissal of a failure-to-protect claim when the plaintiff did not allege that any of the gang members in the general population had committed violent crimes or shown a propensity for violence sufficient to put jail officials on notice that these gang members posed a substantial risk to other inmates); *Armstrong v. Price*, 190 F. App'x 350 (5th Cir. 2006) (per curiam) (affirming summary judgment in favor of prison officials on a failure-to-protect claim when the officials

failed to investigate the plaintiff's vague allegations that he had been threatened by unnamed inmates and prison staff). Other circuits have also held that a prison official's knowledge of an inmate's violent tendencies and threatening words or actions is critical to determining whether that official has violated the Constitution by failing to protect other inmates. *Compare Labatad v. Corr. Corp. of Am.*, 714 F.3d 1155 (9th Cir. 2013) (per curiam) (affirming summary judgment in favor of prison officials who housed an inmate in a cell with a rival gang member when the two had been housed together in general population for an extended period with no record of any threats or violent behavior between the two), *Jones v. Beard*, 145 F. App'x 743 (3d Cir. 2005) (per curiam) (affirming summary judgment in favor of prison officials who housed an inmate with mental problems with the plaintiff when there was no evidence that the mentally ill inmate had been violent or otherwise posed a threat to the plaintiff), *and Falls v. Nesbitt*, 996 F.2d 375 (8th Cir. 1992) (rejecting a claim that housing a protective custody inmate with a general population inmate in violation of prison regulations, without evidence of specific threats of harm, rose to the level of a constitutional violation), *with Hamilton v. Leavy*, 117 F.3d 742 (3d Cir. 1997) (reversing the dismissal of the plaintiff's complaint when he alleged that prison officials failed to take steps to protect him from other inmates despite multiple, well-documented threats against the plaintiff); *and Walsh v. Mellas*, 837 F.2d 789 (7th Cir. 1988) (affirming a judgment in favor of the plaintiff

who was injured by a gang-member inmate when there was evidence that the defendants knew that gang members were targeting certain groups of inmates and plaintiff was a member of the targeted group).

In this case, even viewing the evidence in the light most favorable to Goodwin, there is no evidence that Collins had any information that would tend to indicate that Ramirez was violent—either physically or sexually. Nor did Collins have any information indicating that Goodwin had been threatened by Ramirez or any other inmate. In the absence of such evidence, there is no basis for finding that Collins knew of a substantial risk to Goodwin's safety and acted in a manner deliberately indifferent to it when he obeyed his lieutenant's order to house the two inmates together.

In support of his position, Goodwin points to the evidence showing that Collins and Ramirez had different custody designations at the time of the assault as being sufficient to give rise to an inference that Goodwin faced a substantial risk of harm from Ramirez. Goodwin asserts that his P2 designation is a "safekeeping" designation which is assigned to offenders "who require separate housing in the general population because of threats to their safety due to a history of homosexual behavior, a potential for victimization or other similar reasons." (Dkt. 50-1, p. 64). In contrast, Ramirez had a custody designation of G5, which Goodwin contends is applied to inmates who have a history of assaults. (*Id.* at 2, 56).

But the record evidence does not support Goodwin's contentions. The summary judgment evidence shows that an inmate may be given a G5 custody designation based on a history of escapes, consensual sex with others, extortion, or using marijuana, rather than or in addition to engaging in violent behavior. (*Id.*). Therefore, while a G5 custody designation may indicate that an inmate has a history of violence, it may also indicate that the inmate has a history of serious, non-violent offenses or escape attempts. The G5 custody designation, standing alone, is insufficient to raise an inference that an inmate poses a substantial risk of harm to other inmates. Therefore, the difference in Goodwin's and Ramirez's custody designations is not, by itself, sufficient to support an inference that a substantial risk of serious harm arose when the two men were placed in the same cell.

In the absence of evidence that Collins knew that Ramirez had a history of either making threats or engaging in violence, Goodwin cannot show that Collins knew that a substantial risk of harm arose when he housed the two men together or that Collins violated Goodwin's constitutional right to be protected from such harm. Goodwin has therefore failed to rebut the first element of the qualified immunity defense, and Collins is entitled to summary judgment in his favor on this defense.

### B. Clearly Established Law

Without evidence of a constitutional violation, the Court need not address the second element of the qualified immunity defense. But even if the evidence could

support a finding that Collins violated Goodwin's constitutional rights, Collins is entitled to summary judgment in his favor because his actions did not violate clearly established law.

The law is considered clearly established "when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would [have understood] that what he is doing violates that right.'" *al-Kidd*, 563 U.S. at 741 (quoting *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)). To determine whether the law is "clearly established," the courts "do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* "The salient question is whether the state of the law gives the official 'fair warning' that his or her conduct is unconstitutional." *Ford v. Anderson County*, No. 22-40559, 2024 WL 77477, at *5 (5th Cir. Jan. 8, 2024) (citing *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). To determine whether the law provides "fair warning," the critical question is "whether the violative nature of *particular* conduct is clearly established." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam)). Accordingly, while there need not be a case with identical facts, the law must nevertheless frame the constitutional question "with specificity and granularity." *Cunningham v. Castloo*, 983 F.3d 185, 193 (5th Cir. 2020) (cleaned up).

In this case, Goodwin argues that the law is clearly established that a prison official's failure to protect one inmate from another inmate who is known to be violent may rise to the level of a constitutional violation. *See Hinojosa*, 277 F. App'x at 370. While true, Goodwin points to no evidence showing that Ramirez was violent or that he was known by prison officials to be violent. And contrary to Goodwin's allegations, the summary judgment evidence makes clear that Ramirez's G5 custody designation does not, by itself, indicate that he is violent, nor does it put prison officials on notice that he has violent tendencies.

In addition, Goodwin's argument frames the constitutional question too broadly. The required "specificity and granularity" requires the Court to consider whether the law is clearly established that placing two inmates with different custody designations in the same cell rises to the level of a constitutional violation. Goodwin points to no case law that so holds, whether from the Fifth Circuit or otherwise. And while it is undisputed that housing a P2 inmate with a G5 inmate violates TDCJ policies, the law is clear that "a prison official's failure to follow the prison's own policies does not, itself, result in a constitutional violation." *Samford v. Dretke*, 562 F.3d 674, 681 (5th Cir. 2009) (citing *Richardson v. Thornton,* 299 F. App'x 461, 462–63 (5th Cir.2008) ("The failure of the prison to follow its own policies . . . is not sufficient to make out a civil rights claim.")).

Goodwin has not shown that clearly established law holds that housing two inmates with different custody designations in the same cell poses a substantial risk of harm, in and of itself, such that a prison official who houses the two inmates together violates the Constitution. Nor has Goodwin shown that the state of the law in November 2019 was sufficiently clear as to give Collins 'fair warning' that his conduct in housing two men with different custody designations in the same cell was unconstitutional. Goodwin having failed to carry his burden to show that Collins's actions violated clearly established law, Collins is therefore entitled to summary judgment in his favor on the basis of qualified immunity.

## IV. <u>CONCLUSION AND ORDER</u>

Based on the foregoing, the Court **ORDERS** as follows:

1. Collins's motion for summary judgment, (Dkt. 28), is **GRANTED**.
2. The pretrial conference scheduled for Tuesday, February 6, 2024, (Dkt. 61), and all other deadlines in the Court's scheduling order, (Dkt. 49), are **CANCELLED**.
3. Final judgment will be separately entered.

4. This action is dismissed with prejudice.

The Clerk will provide a copy of this Order to the parties.

SIGNED at Houston, Texas, on _____ Jan 18 _____, 2024.

DAVID HITTNER
UNITED STATES DISTRICT JUDGE